[Sac. No. 1975.    In Bank.—July 3, 1914.]

## W. G. PRICE, Respondent, v. NORTHERN ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

NEGLIGENCE—MASTER AND SERVANT—UNSAFE PLACE TO WORK—RAILROAD TRESTLE—REMOVAL OF STAGING.—Where a carpenter, employed by a railway company to assist in rebuilding a trestle, is suddenly called from his regular work and ordered to help in putting a cap on a trestle bent and then to assist in removing the staging, and fifteen minutes afterward he is injured by the falling of the bent from want of bracing, the rule that it is not the duty of an employer to furnish a safe place to work where employees are engaged in a work that in itself constantly changes the character or safety of the place, does not apply.

ID.—CONTRIBUTORY NEGLIGENCE—RIGHT OF EMPLOYEE TO ASSUME THAT PLACE TO WORK IS SAFE.—In such case the carpenter, in the absence of actual knowledge to the contrary, or circumstances under which he would be held to be required to have such knowledge, had the right to assume, when directed to assist in removing the staging, that the bent had been so braced that it would not fall when the staging was removed, and it cannot be held as matter of law, under the circumstances, that he was guilty of contributory negligence in not observing the absence of bracing, however obvious that fact might have been if he had made an examination to see what the actual condition was, especially since it appears that he was suddently called to assist in this work when the bent was practically

completed, that he was simply obeying orders of the foreman to do this particular thing, and that the men were being urged to work quickly.

ID.—ACTION BY EMPLOYEE TO RECOVER FOR INJURIES—SUFFICIENCY OF EVIDENCE TO SUSTAIN RECOVERY.—In this action by the carpenter against the 'railway company to recover for his injuries, there was sufficient evidence to justify the jury in concluding that it was negligence on the part of the defendant not to secure such bent; that the foreman had knowledge of its insecure condition; that the plaintiff was ignorant of such condition and had a right to assume that the place was a safe one in which to work; that he was not guilty of contributory negligence, under the circumstances, in undertaking the removal of the timber, in obedience to the urgent command of the foreman, without making an examination to ascertain whether the bent was secure; and that a sufficient case was made out to justify the finding of the jury in favor of the plaintiff.

ID.—EXAMINATION OF WITNESS—ANSWER NOT RESPONSIVE TO QUESTION —MOTION TO STRIKE OUT.—If in such action the plaintiff was asked by his counsel if he was suffering from his injuries when he went to work for other parties, his answer, "Well, my capital is my labor and I have a family to support, and I have got to work whether I suffer or not," was not responsive to the question, and should have been stricken out on motion.

ID.—DENIAL OF MOTION TO STRIKE OUT EVIDENCE—HARMLESS ERROR.— But the denial of such motion is not ground for reversal, if the facts given in the answer otherwise appeared, at least inferentially, during the examination of the witness.

ID.—TESTIMONY AS TO DANGEROUS CHARACTER OF STRUCTURE—MOTION TO STRIKE OUT—HARMLESS ERROR.—In such action error, if any, was harmless, in striking out testimony that, to a man of experience in the construction of trestles, the fact that a trestle was not braced would be a sign that it was unsafe, the moment he went to the trestle to work, and that the dangerous character of an unbraced part of the trestle was not a hidden danger, if no objection was made to the questions asked the witness, and the answers were substantially the same as the simple inferences that would be drawn by the jury from the facts in reference to the construction of the contrivance previously detailed by the witness.

ID.—MANNER OF PERFORMING WORK — EVIDENCE THAT WORK WAS RUSHED.—In such action evidence was admissible that the work was being "rushed" by the foreman, and that his orders along that line were given in such manner as to impel the workmen to great speed, as bearing upon the action of the plaintiff in obeying implicitly, without examination as to the probable effect of obedience; and hence as bearing upon the questions of assumption of risk and contributory negligence. And in this behalf it was not **prejudicial**

error to permit a witness to state, in regard to the conduct of the foreman: "His orders were all in a hurry-up style. It was a rush from the time we went out until we left the works at noon or night; you can guess the language, and most of the time it was language forcible language."

ID.—COMMENT BY COURT ON EVIDENCE—INVASION OF PROVINCE OF JURY.—On motion to strike out such testimony, it was not prejudicial error for the court to state, though the statement is not a happy one, that the testimony was not given "for the purpose of prejudicing the defendant. It is given—it was given to hurry the men along and cause them to work all the faster and thereby giving them a less opportunity of seeing any danger if there was any danger in the vicinity." Such language on the part of the court will not be held ground for reversal on appeal, as an invasion of the province of the jury, especially when no exception or objection was made in the lower court, where any possible prejudicial effect could have been removed by proper instruction or admonition to the jury.

ID.—DAMAGES FOR PERSONAL INJURIES—EXCESSIVE VERDICT—REVIEW ON APPEAL.—The verdict in a personal injury case will be disturbed on appeal on the ground of excessiveness only when it appears that the damages are so large that the award can be sustained on no other theory than that it was the result of passion or prejudice on the part of the jury.

APPEAL from a judgment of the Superior Court of Butte County and from an order refusing a new trial. John C. Gray, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, A. M. Seymour, W. H. Carlin, and A. F. Jones, for Appellant.

L. F. Eggers, and H. D. Gregory, for Respondent.

THE COURT.—This is an action for damages for personal injuries. Plaintiff had judgment and defendant appealed to this court from such judgment and from an order denying its motion for a new trial.

The appeal was transferred by this court to the district court of appeal of the third district for hearing and determination, and subsequently submitted therein for decision. Owing to a difference of opinion among the members of that court, the appeal was retransferred to this court with the opinions in writing of the justices of that court. In what

follows we are using to a great extent the opinion prepared by Mr. Justice Burnett upon matters as to which there was no disagreement between him and his associates.

Following the verdict of a jury, judgment was awarded plaintiff for the sum of two thousand five hundred dollars as damages for personal injuries. The view that we must take of the facts reveals the following situation: Plaintiff was a carpenter, and, during the month of January, 1909, he was employed by defendant to assist in rebuilding its trestle and approach across the Yuba River, just south of Marysville. Immediately prior to the accident he was at work on a car fixing piles for the driver, that is, trimming the ends of piles so that rings could be driven on them in order that the pile driver would not split the piling. This car upon which he was at work was on the approach of the railroad crossing Yuba River and was the third car behind the pile driver, the pile driver being at the end of the bridge toward Sacramento. While he was thus engaged, the defendant railway company had a gang of men at work building and erecting trestle bents on the south side of the Yuba River. This trestle was composed of bents made of a large mud sill at the bottom, one upright post extending from the center of the mud sill perpendicular and on each side a batter post. On top of these three posts was placed in horizontal position at quite a distance above the mud sill the cap which was composed of a large, heavy piece of timber. These bents were some fifteen or sixteen feet apart and on top of the caps were placed what was called the stringers, upon which were to be placed the cross ties, and on these the rails. The last bent at the edge of the water, south of the river, had been erected and was in place excepting that the cap had not been placed in position on top of the posts. A temporary scaffolding had been erected on the south end of this bent composed partly of two long pieces of timber some sixteen or eighteen feet in length and being in size four inches by six inches. One of these was laid parallel with the line of the railroad on each side of the bent and they were some eight or ten feet apart. The ends of these four by six pieces rested on a short post ten or twelve inches high. These two pieces held the scaffold and they leaned against the batter posts. Upon these four by six pieces were placed railroad cross ties built up to form a platform for the purpose of raising the cap from the

ground and placing it in its proper place on top of the posts. This cap was very heavy and it took eight or ten men to lift it in place on top of the posts. No bracing other than the scaffolding or staging was placed on said bent to secure it or to prevent it from falling. This bent was twelve feet high. With the bent in this condition, not having been braced except in so far as it was braced by the scaffolding or staging, the plaintiff Price was ordered by the foreman of the work to leave the car where he had been working and go to this bent, some two hundred yards away, to assist in raising the heavy cap from the ground on to the platform and from there placing it in its proper place on top of the posts. Plaintiff had nothing to do with the building of this trestle bent, upon which he was to assist in placing the cap, nor with the construction of any of the trestle bents which had been built at that place. The trestle which had been built from the south up to the edge of the water, as aforesaid, was some two hundred yards in length. This had all been built while plaintiff was engaged at other work. When plaintiff arrived at the said bent, as testified by him, "When I got there, there was the staging or platform fixed around the bent that had no cap. It stuck up there in the air. He (referring to Brewster, the foreman) ordered us to go up there. He told us to go up and put that cap on, 'This work is moving damn slow.' " The cap was raised by the men and placed in position and nailed fast to the upright posts. After the cap was placed in position the foreman ordered plaintiff and the other men to throw the ties down and he then said to plaintiff, "Price, get down there and help that staging away. This thing is moving damn slow." Plaintiff jumped down and stepped to this four by six and put his shoulder under it. He was assisted by a man by the name of Hudson and one other man and had moved a few steps and was right under the bent with his back toward it when someone called, "Look out." The bent fell and struck the timber they were carrying and knocked the plaintiff unconscious to the ground. As a result of the accident plaintiff was quite seriously injured. From the time he arrived at the bent which fell and injured him until the accident occurred was about fifteen minutes. The plaintiff had never been at the place where the accident occurred before.

Appellant contends that the case for the plaintiff rests
upon the proposition that it was the duty of the defendant
to use reasonable care in furnishing a safe place for plaintiff
to work and that this duty was violated, but that this prin-
ciple does not apply for the reason that such duty of an em-
ployer does not exist where the servants are engaged in a
work that in itself constantly changes the character or safety
of the place where they are working. In other words, it is
the contention of appellant that plaintiff and his co-workers,
by their own efforts, created the unsafe place, and, there-
fore, the general doctrine does not apply to the facts here.

In this connection much reliance is placed upon the case of
*Callan* v. *Bull*, 113 Cal. 593, [45 Pac. 1017]. We are of the
opinion, however, that the principle of that case is not ap-
plicable here. In this case, Price had nothing to do with the
construction of the trestle bent, beyond helping, when called
from his other work to do so, in putting on the cap. He was
then told to assist in getting the staging away. So far as
he was concerned, the place of work to which he was brought,
and where he was directed by the foreman to assist, had al-
ready been created. He was working under the immediate
supervision of a foreman, and was not erecting trestle bents
or creating them on his own judgment and at his own risk.
In the absence of actual knowledge to the contrary, or cir-
cumstances under which he would be held to be required to
have such knowledge, he had the right to assume, when di-
rected to assist in removing the scaffolding, that the bent
had been so braced that it would not fall when the scaffolding
was removed. And it cannot be held as matter of law, under
the circumstances, that he was guilty of contributory negli-
gence in not observing the absence of bracing, however obvi-
ous that fact might have been if he had made an examination
to see what the actual condition was. It must be borne in
mind that he was suddenly called to assist in this work when
the bent was practically completed, and that he was simply
obeying orders of the foreman to do this particular thing
and that particular thing, and that the men were being urged
to work quickly.

There is evidence that the defendant, through its foreman,
had knowledge of the insecure and unsafe condition of the
bent in question. The witness Hudson testified, referring
to the foreman, that ''When he asked me to take down the

platform and I realized that the bent needed something, I asked Mr. Brewster, the foreman, if he had a dog or any dogs to drive in to hold the bent and he said: 'To hell with the dogs; that is safe enough; go on and get that out of the way.' The dogs I speak of are sill stays or irons. You can drive it in on the bottom and then on the top and it will hold it temporarily until you can get it properly stayed.''

As said in the opinion prepared by Justice Burnett, we think the case is governed by the rule and principle announced in such cases as *Elledge* v. *National City etc. Railway Co.,* 100 Cal. 282, [38 Am. St. Rep. 290, 34 Pac. 720, 852] ; *Hanley* v. *California etc. Co.,* 127 Cal. 233, [47 L. R. A. 597, 59 Pac. 577] ; *Powley* v. *Swenson,* 146 Cal. 471, [80 Pac. 722], and *Majors* v. *Connor,* 162 Cal. 131, [121 Pac. 371].

It is believed that there was sufficient evidence to justify the jury in concluding that it was negligence on the part of defendant not to secure said bent; that the foreman had knowledge of its insecure condition; that the plaintiff was ignorant of it and had a right to assume that it was a safe place in which to work; that he was not guilty of contributory negligence, under the circumstances, in undertaking the removal of the said timber, in obedience to the urgent command of the foreman, without making an examination to ascertain whether the bent was secure; and that a sufficient case was therefore made out, within the principles already announced, to justify the finding of the jury in favor of the plaintiff.

During the progress of the trial the plaintiff was asked by his counsel this question: ''I will ask you to state if you were suffering from this injury when you went to work for the Diamond Match Company and Cotton Brothers?'' An objection was made by the appellant on the ground that the question called for incompetent, immaterial, and irrelevant testimony and also for his opinion and conclusion. The objection was overruled and the witness answered: ''Well, my capital is my labor and I have a family to support and I have got to work whether I suffer or not.'' Appellant moved to strike out the answer as not responsive to the question and for all of the reasons stated in the objection to the question. The motion was denied.

It is clear that the question is one that called for an affirmative or negative answer and that the answer was not at

all responsive, and the motion should have been granted. The facts, however, given in the answer otherwise appeared, at least inferentially, during the examination of the witness and it can hardly be said that the error was of sufficient gravity to justify a reversal of the judgment.

Witness Curran, called for plaintiff, was asked, on cross-examination, the following question: "Now, Mr. Curran, if you or any man of any experience in the construction of trestles should approach a section of the trestle which has been built, consisting of one or more bents, and they were not braced in any way, would that be a sign that it would be unsafe?" and the answer was, "Yes, sir." And again— "Would that be discernible and appreciable to any man of any experience in that work the moment he went to the trestle to work? If they were not braced would he necessarily see that and notice that? A. Yes, sir." And again: "So, then, the fact that a piece of trestle may have been constructed, or practically constructed, we will say, four or five, and not in any way braced, the dangerous character of that is not a hidden or secret one, is it? It is open to the inspection of the eye? A. Yes, sir; it would be, of course." On redirect examination, in response to a question by plaintiff, the witness stated: "A man in the business of trestle building would observe whether or not a bent was braced," whereupon, plaintiff moved to "strike out the answers of the witness to Mr. Carlin's questions as to whether or not that it would be where he answers that it would be observable," and the motion was granted. No objection was made to the questions asked upon cross-examination.

Of course, a party cannot lie by and take a chance upon an answer being favorable and, when disappointed, have a motion to strike out take the place of an objection. Besides, it will be observed that the questions on cross-examination related to a person of experience in trestle building and the further interrogatory on redirect examination did not change, in that particular, the aspect and significance of the inquiry. It is believed, though, that if any error was committed in this behalf the error was without prejudice as the answers to the questions were substantially the same as the simple inferences that would be drawn by the jury from facts in reference to the construction of said contrivance previously detailed by the witness.

Plaintiff was asked the question by his counsel: "To get down back to where the accident happened or injury occurred, I will ask you how, in what manner were the orders being given down there, and the men of which you were one, being worked—just state it." Appellant objected on the ground that it is "incompetent, immaterial and irrelevant and calling for his opinion and conclusion." The court said: "He calls for a fact—how were they given and who gave them. The objection will be overruled." The witness answered as follows: "His orders were all in a hurry up style. It was a rush from the time we went out until we left the works at noon or night; you can guess the language, and most of the time it was language, forcible language. He did not pick the language." Counsel for appellant: "We will move to strike out the answer for all of the reasons stated in the objection to the question." The motion was denied and thereupon counsel for appellant said: "And in particular we will move to strike out that part of the answer in which he says, 'Most of the time, pretty forcible language.' That is what I understood him to say—'You can guess the language.' It can be given for one purpose only and that is to create a prejudice. The court said: 'No, sir, I don't look at it in that way, not for the purpose of prejudicing the defendant. It is given—it was given to hurry the men along and cause them to work all the faster and thereby giving them a less opportunity of seeing any danger if there was any danger in the vicinity. For that reason I will let the answer stand."

We are of the opinion that it was competent for the plaintiff to show that the work was being "rushed" by the foreman, that his orders along that line were given in such a manner as to impel the workmen to great speed, as bearing upon the action of the plaintiff in obeying implicitly, without examination as to the probable effect of such obedience. Such evidence was material upon the questions of assumption of risk and contributory negligence. The subject matter of the inquiry was such that the witness was entitled to give his conclusions, for the same reasons that a witness may testify as to the appearance of another, whether rational, morose, etc. (See *People* v. *Manoogian,* 141 Cal. 595 et seq. [75 Pac. 177], and cases there cited). As said in the case just cited: "Certain questions are of such a nature that it is impossible for a witness to convey to a jury an adequate conception of the

ultimate fact except by announcing the result of his obser-
vation." And in stating such result, the witness is really
testifying to a fact.

It is claimed on this appeal that the statement of the court
in denying the motion to strike out this testimony, was an
invasion of the exclusive province of the jury to determine
the credibility and good faith of the witness and the weight
of his testimony, and that the same was prejudicially errone-
ous. It is clear enough to us that the judge did not intend
to go further than to state the reason why the testimony was,
in his mind, admissible, and that he had no idea of express-
ing any opinion as to the credibility or good faith of the
witness, and, while the words of the court were not happily
chosen, we are not strongly impressed with the argument that
the jury may have been in any way influenced to the detri-
ment of the defendant thereby. Counsel for defendant ap-
parently did not regard the remark as injurious at the time it
was made, for they made no complaint. As is stated in the
opinion prepared by Justice Hart in the district court of ap-
peal, no exception or objection to the remark was made in
the lower court, objection being made on this appeal for the
first time. It seems clear that counsel should have called the
attention of the trial judge to anything deemed prejudicial,
thus giving him an opportunity to withdraw anything objec-
tionable and state his real intent and meaning. Of course,
the matter was of such a nature that all possible prejudicial
effect would have been obviated by proper instruction and
admonition to the jury.

We have examined the record with reference to the other
rulings complained of, and find nothing warranting a rever-
sal. The testimony of Mr. Curran to the effect that he would
not consider the bent safe unless secured with bracing, if it
was above five or six feet in height, even if improperly ad-
mitted, we consider to have been without prejudice. It ap-
pears to have been conceded by all the witnesses that bracing
of some kind was essential, and the evidence was such that
if the jury was satisfied that there was no bracing, it could
not conclude otherwise than that the scaffolding could not be
safely removed unless the bent was first braced in some way.
Instruction No. 2 given at the request of plaintiff reasonably
construed was not erroneous as applied to the facts of the
case. So construed we do not see how it could have been un-

derstood by the jury as imposing upon the defendant any liability due to failure to furnish plaintiff a safe place in which to work, unless it had been guilty of a want of reasonable care in the matter. Instruction 11 given at the request of plaintiff was an attempt to state an abstract proposition of law which was not applicable under the facts of this case. We are satisfied, however, that defendant could not have been prejudiced thereby. Instruction 8 on the subject of damages, given at the request of plaintiff, appears to have been in a form approved by prior decisions. It did not authorize the jury to award any future damage except that if they believed from the evidence that the injury had impaired the plaintiff's power to earn money in the future, they might award him "such sums of money as will compensate him for such loss of power." Instructions 1 and 3 requested by defendant were covered, as far as proper and necessary, by other instructions. We are of the opinion that we cannot hold that a reversal should be had on the ground that the verdict was for an excessive amount. As has often been said, we can disturb a verdict on this ground only when it appears that the damages are so excessive that the award can be sustained on no other theory than that it was the result of passion or prejudice on the part of the jury.

The judgment and order denying a new trial are affirmed.

Beatty, C. J., does not participate in the foregoing.

Sloss, J., being disqualified, does not participate in the foregoing.