[Sac. No. 4868.   In Bank.—September 3, 1935.]

In the Matter of the Estate of GEORGE GOLDEN, Deceased. W. J. LINSTEAD, Respondent, v. E. T. STODDARD, Appellant.

Taft & Spurr for Appellant.

Hale McCowen, Jr., for Respondent.

CURTIS, J.—The following portion of the opinion of the District Court of Appeal rendered in this action we approve and adopt as a part of our opinion:

"This is an appeal from a judgment rendered pursuant to the special findings of a jury setting aside a previous order admitting an holographic will to probate, on the ground that the alleged will is a forgery.

"George Golden, whose real name was George Linstead, died in Mendocino County February 29, 1932, possessed of real and personal property valued at about $25,000. His wife died long prior to the execution of the holographic will which is here involved. He left no heirs except three brothers who reside in Montana, one of whom is the contestant herein, and Margaret Hauser, a niece, who lives in San Francisco. Golden left the East many years ago with another man's wife, and changed his name on that account. He had been a resident of Fort Bragg and was prominent in business and politics in Mendocino County for more than thirty-five years. E. T. Stoddard was also a resident of Fort Bragg and was prominent in that community in business and politics during that period of time. He was successively a contractor, the manager of a stage route and of a gas station on the Redwood Highway. He possessed a good reputation and was a close personal friend of Golden for thirty-five years prior to the death of the testator. In September, 1931, after the death of

his wife, Mr. Golden suffered a stroke of paralysis and was afflicted with diabetes. He told Joseph Olinsky, a friend of his, in the summer of 1931, that 'he had some brothers in Montana and a niece somewhere about the Bay there, but he had been out of touch with them for a good many years, and they meant nothing to him; that was after his wife had died. And, he said he did not expect to leave his relatives anything. That he had some good friends, Dave Miller and Ed Stoddard, and that he would leave his property to them.' Stoddard was in communication with his friend Golden up to within six months of his death. Stoddard testified that he drove in his automobile to the Piercy Post Office about four miles from his gas station on January 20, 1932, where he received by mail the will and a letter from Golden, which he examined and 'put them in a leather pouch in which I carry my mail and placed them in the front seat of my automobile'. He also claimed to have received another typewritten letter from Golden which he carried into his gas station and placed on the cash register, but afterwards destroyed it. This was before the death of Golden. When he afterwards looked for the will and accompanying letter from Golden, he failed to find them. He searched in vain for them and concluded he must have lost them. He did not tell his wife about the lost will until about March 3, 1932, after he learned of the death of Golden. The holographic will and accompanying letter purport to be in the handwriting of Golden, and are in the following language:

" 'Nov. 27th, 1931.

" 'For and in consideration of the friendship and friendly love for E. T. Stoddard and for other considerations that has existed for the last twenty-five years it is my last will to give and grant unto E. T. Stoddard one half of my estate at the time of my death anything it may consist of at that time.

" 'GEO. GOLDEN.'

" 'Fort Bragg, Cal.
" 'Jan. 18, 1932.

" 'Mr. Ed. Stoddard,
" 'Piercy, Cal.
" 'Dear Ed.

" 'Pleased to hear you are in good health. My sick spell *hangs* on like the devil and don't get any better. No diden't

expect you over as it has been raining all the time cold as the mischief. Now Eddie inclosed find document for you and should anything happen to me you will have same.

" 'Wishing you all the best of good luck let me hear from you.

" 'GEO. GOLDEN.'

"The preceding letter is not included in the bill of exceptions. Soon after the death of Mr. Golden, Austin Smith was riding in May, 1932, with Mr. Stoddard in his automobile when they were forced to stop because of a flat tire. He testified that he lifted the cushion of the front seat to procure some tools with which to repair the flat tire, when a mouse jumped out. He said: 'I rummaged around for the pump and got it out and while I was pumping up the tire a mouse ran out of the car. When Ed came over there I said "Ed, do you know there are mice in your car? I saw one run out." Then he went to looking in the car and pulled out the front cushion, and a leather pouch fell out and the contents came out and fell to the ground. I started to pick them up and handed him an envelope. He said, "That's the thing I have been looking for sometime." He opened it up and I looked at it. It was a Will signed by George Golden and a letter. I identify Exhibits 10 and 11 as being the same documents. We went over to the store and I got a sandwich and was eating the same at the counter and looking at the will.'

"Mr. Golden died February 29, 1932. Stoddard did not learn of his death until March 3rd. He searched for the will but did not find it, as above related, until the following May. In the meantime he told his wife of the lost will and also informed Leonard Stone, an attorney of Fort Bragg, of that fact. There is substantially no conflict of evidence regarding the foregoing facts, except the circumstances which will be hereafter related.

"Upon petition therefor, the public administrator of Mendocino county was appointed and qualified as administrator of the Estate of George Golden, deceased. After the discovery of the will, it was filed May 9, 1932. On petition of E. T. Stoddard, it was admitted to probate May 27, 1932, and Margaret L. Hauser, the niece of deceased, was appointed and qualified as administratrix with the will annexed of the Estate of George Golden, deceased. October 10, 1932, W. J. Linstead, of Montana, a brother of the deceased, filed a petition

to revoke the probate of the holographic will on the sole ground that the document is not in the handwriting of the deceased. An answer to this petition was filed by the legatee, E. T. Stoddard. The cause was tried with a jury. Special issues were submitted to the jury, which found that the purported will dated November 27, 1931, was neither written, dated, nor signed by the hand of George Golden. A general verdict was also returned in favor of the plaintiff. Pursuant to the special findings and general verdict of the jury, the court rendered judgment February 2, 1933, revoking the letters of administration theretofore issued to Margaret Hauser, and denying probate of the will. From this judgment E. T. Stoddard has appealed.

"It is contended the probate court was without jurisdiction to hear or determine the petition to revoke the probate of the will, for the reason that all of the persons interested in the estate were not parties to the contest; that the former order of court made on May 27, 1932, admitting the will to probate, is *res judicata* for the reason that the petitioner, W. J. Linstead, had full knowledge of that proceeding; that the judgment is not supported by the evidence; that the trial judge and counsel for the petitioner in this proceeding were guilty of prejudicial misconduct, and that the court erred in rejecting competent evidence.

"The court properly denied the appellant's motion to dismiss the petition to revoke the probate of the will. This motion was made on the ground that the court was without jurisdiction to hear and determine the contest of the will for the reason that the citation had not been served upon all heirs of the deceased as required by Sections 381 and 382 of the Probate Code, and that the interested parties were not all represented in the proceedings. It is true that the citation of the time and place of hearing the contest was served upon the brothers of the deceased who reside in Montana only by mail. This does not conform to the requirements of Section 370 of the Probate Code which directs the citation to be served 'personally or by publication in the manner provided by law for the service of summons in civil actions.' Two of the brothers of the deceased failed to appear in the contest of will. Personal service was made on the sole devisee of the will, Stoddard, and upon Margaret Hauser, the administratrix with the will annexed. The petition to revoke the probate

was filed and prosecuted by W. J. Linstead, one of the brothers of the deceased. The proponent of the will might have moved to continue the contest until other proper parties were brought into the proceeding. Other heirs and interested parties are however precluded from contesting the will under the provisions of Section 380 of the Probate Code for failure to file their petitions to revoke the probate within six months after the will was admitted to probate.

■ "This defect of service of the citation did not divest the court of jurisdiction to hear and determine the contest between the parties who were properly before the court.

"It has been held that 'the trial court was. not without jurisdiction to proceed with a hearing of the contest for the reason that the citation mentioned in Sections 1328 and 1329 [now sections 381 and 382, Probate Code] of the Code of Civil Procedure was not served upon all the legatees under the will.' (*Estate of Visaxis,* 95 Cal. App. 617 [273 Pac. 165].) In the case last cited the court further says:

" ' 'We can see no reason why a will contest should not proceed as between the contestant and those upon whom the citation is served. It is settled that jurisdiction over the will contest attaches upon the filing of the petition. (*Estate of Maescher,* 78 Cal. App. 189 [248 Pac. 537].)'

"A petition for hearing in that case was denied by the Supreme Court. It follows that the trial court had jurisdiction in the present proceeding to hear and determine the petition to revoke the probate of the will, between the parties who appeared in court, in spite of the fact that all of the parties interested therein were not before the court, although the judgment would not be binding upon such heirs or interested persons who were not properly served with citation until after the lapse of six months after probate was granted, during which time they were permitted to contest the validity of the will.

■ "The court did not err in sustaining the respondent's objection to an offer on the part of the appellant to rehabilitate the testimony of Mr. Stoddard with respect to a statement that he had written attorney Leonard Stone a letter telling him that he had an holographic will which was executed by George Golden. While Stoddard was being examined by the respondent under the provisions of Section 2055 of the Code of Civil Procedure he was asked if he had ever told

anyone, other than his wife, that he had the holographic will of Golden. Stoddard replied that he had written attorney Stone to that effect. He was then asked if Stone had replied to that letter. Stoddard said that Stone had written to him, but that he had destroyed his letter. Subsequently when Leonard Stone became a witness in behalf of the appellant, he was asked if he had received a letter from Mr. Stoddard regarding the will. An objection to this question on the ground that it was incompetent, hearsay and self-serving, was sustained, for the reason that the appellant sought to prove the contents of the letter, rather than the mere fact that Stone had received such a letter. Mr. McCowen, attorney for contestant, said: 'If all you want to prove by this witness is the receipt of a letter from Mr. Stoddard, our objection will be withdrawn.' Attorney Taft replied, 'We expect to prove the contents of that letter.' It is therefore clear that the objection was sustained on the theory that the appellant sought to prove the contents of the letter rather than the mere receipt thereof. That would have been self-serving and hearsay evidence. He did have a right to prove that Stone received a letter from him concerning the will. (*Davis* v. *Tanner*, 88 Cal. App. 67 [262 Pac. 1106].) But that privilege was not denied him. The court correctly ruled that the appellant was not entitled to prove the contents of the letter.

"We are unable to say that the challenge of the attorney for contestant to the appellant to call a witness whom he knew to be intoxicated was prejudicial misconduct. The witness was called and examined and his evidence was favorable to the appellant. If his evidence was discredited because of his intoxicated condition the record fails to disclose that fact.

"We are of the opinion the court properly denied the appellant's motion to dismiss the petition of W. J. Linstead to revoke the former order admitting the will to probate. The motion was made on the ground that the brother was precluded from maintaining the proceeding under the provisions of Section 380 of the Probate Code because he had *actual knowledge* of Stoddard's petition to probate the will a short time after it was filed. Section 380 of the Probate Code provides:

" 'When a will has been admitted to probate, any interested person, other than a party to a contest before probate and

other than a person who had actual notice of such previous contest in time to have joined therein, may, at any time within six months after such probate, contest the same or the validity of the will.'

"The will was filed May 9, 1932. The petition to probate it was filed by Stoddard on the same day. The original contest to the probating of the will was filed May 23, 1932, by the Public Administrator. The Public Administrator was not such an 'interested person' as would entitle him under the provisions of Section 370 or 380 of the Probate Code to contest the will. (*Estate of Sanborn*, 98 Cal. 103 [32 Pac. 865].) In the case last cited it is said:

█ " 'A public administrator has no interest in an estate, or in the probate of a will; that is a matter which concerns only those to whom the estate would otherwise go.'

"W. J. Linstead is a brother of the deceased and is therefore interested in the estate so as to entitle him to maintain a contest to the will or a petition to revoke the probate thereof after it had been admitted, pursuant to the provisions of Section 380 of the Probate Code. He lives in Montana. He did not know of the petition to probate the will until after May 9th, when it was filed. It was actually admitted to probate eighteen days later, on May 27th. In the absence of evidence to the contrary, we are unable to say, as a matter of law, that eighteen days' notice to one who lives 2,000 miles away in Montana is sufficient time to have enabled him 'to join therein'. There is no evidence that Linstead knew when the petition for probate of the will would be heard. Moreover, since the Public Administrator was not entitled to maintain a contest to the will, it may not be said there was a valid contest of the will which would preclude Linstead under Section 380 of the Probate Code from subsequently petitioning the court to revoke the probate thereof.

█ "For the reason that there was no valid contest of the will by the Public Administrator which would preclude Linstead from maintaining a subsequent contest thereof under Section 380 of the Probate Code, the court properly refused to submit to the jury the special issue which was proposed by the appellant in the following language: 'Did W. J. Linstead have actual knowledge of the probate of the will on May 27th, 1932, and the contest raised by the pleadings filed by E. T. Stoddard, W. F. Ornbaun and Margaret Holt

Hauser?' Margaret Hauser was not a contestant of the will. She was a proponent of the will, and merely asked that she be appointed administratrix with the will annexed in the event that the will was admitted to probate.

"For the reasons heretofore assigned, the order admitting the will to probate on May 27, 1932, was not *res judicata* so as to bind W. J. Linstead thereby and preclude him from maintaining a subsequent petition to revoke the probate of the will under the provisions of Section 380 of the Probate Code."

Appellant assigns as reversible error certain questions asked and statements made by the trial judge during the course of the trial. On one occasion counsel for respondent was examining Stoddard, the appellant, under the provisions of section 2055 of the Code of Civil Procedure in reference to the contents of the typewritten letter which he stated he had received from the deceased and had placed upon the cash register. The witness stated he did not recall the letter's contents except that it contained "some things which had happened between" himself and Golden which the deceased wanted to be kept secret. His attention was then called to an alleged discrepancy between that statement and a former one contained in a printed transcript. Respondent's counsel contended that a comparison of the statements of the witness was important because Stoddard said that Golden "sends him two letters reaching him at the same time and he destroys one and, according to this testimony, one set of facts exists at the former hearing, and we now maintain he is testifying to some other thing different". The following colloquy between court and counsel then ensued:

"The Court: You contend, Mr. McCowen, of course, that this will and the letter which accompanied it, and the envelope in which it was received, were all a part of the fraudulent scheme, and were all a part of one forgery, do you not?

"Mr. McCowen: Yes, Your Honor.

"The Court: And consequently, the basis of that contention must be that either the witness Stoddard mailed it to himself during the illness of Mr. Golden, or had a confederate mail it to him, and that the letter which was received at the same time would contain absolutely inconsistent material?

"Mr. McCowen: Yes, Your Honor.

"The Court: And [the typewritten letter] was one of the true authorship of George Golden. Well, I think the de-

struction of that letter, under the theory counsel is proceeding under, the destruction of it and all circumstances connected with the destruction of it, including inconsistencies as to the destruction of it, are material.''

On another occasion, while the appellant's handwriting expert, Chauncey McGovern, was on the witness stand endeavoring to support his opinion that the will was genuine by a comparison of the handwriting contained in the will and certain exemplars of the deceased's writing, the court interrupted the cross-examination of this witness in the following manner:

''The Court: Before you leave the subject of that 'G'; when you find in a questioned document a number of 'G's' occurring in the middle and all finished with a straight down stroke and no loop, and you find in the admitted documents the 'G' finished with a loop in all cases, except where it is a double 'G' in the words 'Fort Bragg', does that not convey to you some suspicion of the genuineness of the suspected document?

''A. Yes, if that's the only thing I observed, but when I observed that and observed many other things on the other side—

''The Court: But it does convey to you a suspicious circumstance which has been overcome by a preponderance of other facts?''

On further cross-examination of this witness, counsel for respondent was asking if it were not a suspicious fact that a penman varied from his usual habit in making a capital ''E''. To this question the witness was explaining that the variance in forming letters might be due to the writer's haste, in one instance, and to his cautious or more deliberate acts another time. The court interrupted his examination at this point by saying: ''Well, do I understand you to say that the questioned documents, in your opinion, were written cautiously?''

No objection was made by counsel to any of these questions or statements by the court at the time they were made or at any time during the trial of the action. Neither was any motion or other action made by counsel for appellant to strike out any of these questions or statements, nor was any request at any time made of the court to instruct the jury to disregard the same. It has repeatedly been held that any exception

to an improper remark made by a trial judge during the trial of an action in order to avail the party claiming injury thereby must have been taken by such party at the time the remark was made or at some time thereafter before the close of the trial. (*Hughes* v. *Hartman,* 206 Cal. 199, 206 [273 Pac. 560], *Loeb* v. *Kimmerle,* 215 Cal. 143, 154 [9 Pac. (2d) 199], *Price* v. *Northern Electric Ry. Co.,* 168 Cal. 173, 182 [142 Pac. 91], *Compton-Gardena Milling Co.* v. *McCartney,* 69 Cal. App. 708 [231 Pac. 764], and *Franceschi* v. *Nardi,* 77 Cal. App. 78 [246 Pac. 130].) This is the rule even in criminal cases. (*People* v. *MacDonald,* 167 Cal. 545, 550 [140 Pac. 256].) The reason of this rule as stated in these cases is that if the attention of the trial court is directed to the improper statement an opportunity is thus given the court by proper instructions to the jury, or otherwise, to cure any injury occasioned by such remark. And it is further held that in the absence of such action on the part of the complaining party he is held to have waived any right to except to the improper remark or action of the court. It is equally well established that in cases where it is apparent that it would be fruitless on the part of the injured party to apply to the trial court to rectify the wrong committed by the improper remark, no duty rests upon him to make any effort to correct the error. However, we do not regard the instant case as coming within this exception to the general rule. A reading of the record in this case does not justify the slightest inference that the trial judge in this action would not have responded to any reasonable request on appellant's part, either to withdraw any objectionable remark or to instruct the jury to disregard the same. From what we have said we do not wish to be understood as holding that the questions of the trial judge, or any remark made by him, were prejudicial to the rights of appellant, or in any way deprived him of the right to a fair trial. Counsel for appellant apparently did not regard the questions asked, nor any of the statements made, by the trial judge detrimental to his client's cause at the time they were asked or made, as he offered no complaint to or even request for the court to instruct the jury to disregard them. In our opinion, no inference unfavorable to the appellant could reasonably be drawn from said questions as asked by the court, or from any of the statements complained of.

The further contention is made by the appellant that the evidence in this case so greatly preponderates in his favor as to virtually present a case where the evidence is without conflict. It is true there is ample evidence in the case which would have supported a verdict in appellant's favor, had such a verdict been rendered by the jury. We are not prepared to say, however, that the preponderance of the evidence is in favor of appellant, although we must admit that there is considerable apparently credible evidence in his favor. A number of substantial and creditable witnesses who had known Golden for years and were familiar with his handwriting testified that the instrument claimed by appellant to be the last will of Golden was in the handwriting of Golden. Among these witnesses was the president of the bank at Fort Bragg, who was so positive that the signature to this instrument was the genuine signature of Golden that he said he would not hesitate to have cashed a $5,000 check on such signature. Other witnesses were equally positive, including a handwriting expert who had made a study of the document offered as the will of the deceased, as well as of exemplars of the deceased's signature, and pronounced the document genuine. On the other hand, a handwriting expert equally well qualified as the one testifying in appellant's favor gave as his opinion, after devoting time and study to the question, that the purported will was a forgery. Hundreds of exemplars of Golden's true signature were admitted in evidence and submitted to the jury and the trial judge, along with the disputed document. There were also circumstances shown by the evidence which are claimed to have thrown doubt upon the claim of appellant. The manner in which he received the purported will and his claim that he had lost it and did not find it until some two months after the death of Golden presents a most unusual story. By the will, if genuine, he would come into the possession of some ten thousand dollars on Golden's death, a considerable sum of money to one in appellant's financial circumstances. He did not even tell his wife, with whom he was living on friendly terms, of their prospective good fortune. Even after Golden's death, when he was making an intensive search for the document, he did not tell his wife—the one person perhaps more than any other who could have assisted him in his search—until over a

month after Golden's death that he had lost the will or ask for her assistance in finding it.

Confronted with this state of the evidence, can this court say that there is no substantial evidence to support the verdict of the jury? The answer must be in the negative. The case then upon this point is governed by the well-established and often-reiterated rule that where there is a substantial conflict in the evidence, the verdict of the jury must be upheld. We see no escape from this conclusion. The judgment, therefore, is affirmed.

Langdon, J., Waste, C. J., and Shenk, J., concurred.

Rehearing denied.