**Alan N. ALPERN,
Appellant-Cross-Appellee,**

v.

**Lawrence N. HURWITZ,
Appellee-Cross-Appellant.**

**Nos. 498, 593, Dockets 80–7722, 80–7732.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 1980.
Decided March 19, 1981.

Jeffrey A. Fillman, New York City (Finley, Kumble, Wagner, Heine & Underberg, New York City, of counsel), for appellant-cross-appellee.

Sidney Meyers, New York City, for appellee-cross-appellant.

Before LUMBARD, MULLIGAN and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Plaintiff and defendant cross-appeal from a judgment of the United States District Court for the Southern District of New York which followed a non-jury trial before Judge Whitman Knapp. Plaintiff appeals from Judge Knapp's dismissal of plaintiff's first and third causes of action. Defendant appeals from a $21,600 award to plaintiff on his second cause of action. We vacate that portion of the judgment which dismissed plaintiff's first cause of action and remand that cause of action for further consideration by the district court. We affirm the remainder of the judgment.

### The First Cause of Action

On August 25, 1972, plaintiff, Alan N. Alpern, and defendant, Lawrence N. Hurwitz, entered into a written agreement terminating April 25, 1975, pursuant to which Alpern agreed to serve as Hurwitz's financial consultant for a fee of $3000 a month plus expenses. Alpern was a semi-retired lawyer who had become knowledgeable in the field of corporate fiscal management and control. Hurwitz was an investor with a variety of corporate holdings.

One of the companies in which Hurwitz had a substantial interest was Computer Power International Corporation. In April 1974, while Alpern was serving as a director of that company and Hurwitz was its president, they became involved in a controversy over Hurwitz's use of corporate funds and Hurwitz succeeded in forcing Alpern's resignation as director. Although Hurwitz gave Alpern no notice that he was thereby terminating the financial consulting agreement, he made no further payments. Alpern continued to send Hurwitz monthly bills which Hurwitz ignored. In April 1977, Alpern commenced this diversity action in federal court.

In dismissing the first cause of action, the district court found that the parties intended the consulting agreement to be performed by plaintiff only so long as a viable confidential relationship existed between them and that the agreement was "irretrievably ruptured" by the April 1974 incident. We believe that these findings do violence to the terms of the written contract, which contain no such expression of intention.

■ A contract of employment for a definite term may not lawfully be terminated by the employer prior to the expiration date in the absence of just cause. *Crane v. Perfect Film & Chemical Corp.*, 38 App. Div.2d 288, 291, 329 N.Y.S.2d 32 (1972); 53 Am.Jur.2d *Master & Servant*, §§ 27, 34, 45, 49 (1970). It is true that where a contract creates a close confidential relationship such as exists between attorney and client, courts will sometimes read into the agreement a provision that it may be terminated by the employer at any time without cause. *See Greenberg v. Jerome H. Remick & Co.*, 230 N.Y. 70, 73–74, 129 N.E. 211 (1920). However, even in the highly confidential relationship of attorney and client, such a provision will not be implied where the attorney has been employed under a general retainer for a fixed period to perform legal services as the need for them may arise. *Id.* at 74–76, 129 N.E. 211; *see generally Construction and Operation of Attorney's General or Periodic Retainer Fee or Salary Contract*, 43 A.L.R.2d 677 (1955). That is the type of contract which existed between Alpern and Hurwitz. It was error, therefore, to imply a provision in the contract that it would automatically terminate if the confidential relationship between the parties was "irretrievably ruptured."

■ Assuming for the argument only that Hurwitz could lawfully have terminated Alpern's employment upon the "rupture" of their confidential relationship, there is no evidence that Hurwitz ever did so. The record shows only that he stopped paying Alpern and no longer used his services. Alpern, on the other hand, treated the relationship as a continuing one by sending Hurwitz monthly bills. Whether Alpern should be precluded from recovery on some theory such as mutual abandonment or equitable estoppel are issues we do not address. We hold only that the parties' differences at Computer Power International Corporation did not automatically terminate their respective obligations under the employment contract. That portion of the judgment dismissing plaintiff's first cause of action is vacated and the issues presented in that cause of action are remanded to the district court for its further consideration.

■ In the event that the district court determines upon further consideration that defendant breached the contract of employment, defendant shall be given an opportunity to inquire concerning plaintiff's efforts, if any, to mitigate damages. Plaintiff's recovery shall be limited to the unpaid contract installments, less the amount he earned or with reasonable diligence might

946

have earned elsewhere, after he knew or reasonably should have known that defendant was no longer going to perform. *See Cornell v. T. V. Development Corp.*, 17 N.Y.2d 69, 73–76, 268 N.Y.S.2d 29, 215 N.E.2d 349 (1966).

The district court is also directed to determine on the merits whether Hurwitz is entitled to an offset of $20,000 as the result of a fee received by Alpern when certain stock owned by a subsidiary of Computer Power International Corporation was sold. The contract between the parties provided that Alpern's consulting fees were to be in addition to any fees he might receive in arranging "any merger, acquisition, private placement or similar transaction", and there is a dispute whether the sale in question should have been treated as a "private placement." The district court disposed of Hurwitz's proposed offset by holding that "[t]here is no basis for such a claim in the pleadings or in defendant's pre-trial memorandum." However, extensive proof was offered and received concerning the legal effect of this payment; the parties were directed to brief the issue in their post-trial memoranda, and they did so. If, on remand, the district court should decide that Alpern is entitled to a recovery under the consulting agreement, it should determine on the merits whether Hurwitz is entitled to an offset because of the $20,000 fee that Alpern received.

### The Second Cause of Action

■ In September 1972, Harlequin Management Corporation, of which Hurwitz was the sole shareholder and director, leased two apartments in New York City for Alpern's use as a residence and office. Alpern guaranteed Harlequin's performance under the lease, and Hurwitz agreed to pay Alpern $900 a month "as a contribution towards [his] maintaining a working facility in the City of New York." The district court awarded Alpern $21,600 plus interest for twenty-four months of unpaid "contributions."

Defendant's arguments for reversal are completely without merit. The terms of the contract are unambiguous, and defendant's failure to pay is conceded.

### The Third Cause of Action

On October 16, 1972, Alpern gave Hurwitz a letter addressed to an Oklahoma bank, confirming an agreement by Alpern to purchase 200,000 shares of stock owned by one of Hurwitz's wholly-owned corporations. The purpose of this commitment was to assure the bank that, if it refinanced a loan secured by the stock, the loan could be liquidated by tendering the stock to Alpern. Alpern now seeks a *quantum meruit* recovery for Hurwitz's use of this commitment.

The district court found that the parties did not intend Alpern to be compensated unless the commitment was used. The Oklahoma bank did not refinance the loan, and the district court found that the commitment was not used. These findings of fact were not clearly erroneous.

### Disposition

That portion of the judgment which dismissed plaintiff's first cause of action is vacated, and the first cause of action is remanded to the district court for further proceedings consistent with this opinion. The remainder of the judgment is affirmed. No costs are allowed to either party.