[No. B047404. Second Dist., Div. Four. Aug. 31, 1993.†]

KENNETH EVAN CHYTEN, Plaintiff and Respondent, v.
LAWRENCE & HOWELL INVESTMENTS et al., Defendants and
Appellants.

†Review granted December 16, 1993. Review dismissed and opinion ordered published
September 22, 1994.

## COUNSEL

Menke, Fahrney & Carroll, Oakley C. Frost and Dennis V. Menke for Defendants and Appellants.

Fabozzi, Prenovost & Normandin and Michael G. Dawe for Plaintiff and Respondent.

## OPINION

**VOGEL (C. S.), J.**—In this action for breach of an employment contract, a jury awarded a verdict of $81,401.70 for the employee, plaintiff and respondent Kenneth Evan Chyten, against defendants and appellants Lawrence & Howell Investments, a partnership, and its partners Arthur G. Lawrence and Lorraine Howell. Appellants appeal from the judgment entered on the verdict following denial of their motion for new trial.

### FACTS

For many years appellants have operated a real estate investment business. Appellants placed an ad in the Los Angeles Daily Journal for an attorney with real estate and litigation experience to act as in-house counsel. Respondent Chyten, an attorney, replied to the ad. Appellants were impressed with

respondent's background and after two interviews made him an offer. Because he would have to move from San Francisco and because he had heard appellants were sometimes difficult people for whom to work, respondent was concerned about job security and suggested a written long-term contract. Appellant Lawrence suggested that respondent draft something and bring it to an additional interview, which he did.

At that meeting the parties negotiated terms and reached agreement. The negotiated terms were then typed up as an agreement entitled, "Personal Services Employment Contract."

The employment contract recited that appellants (described thereafter as Employer) "desire to secure a five-year employment commitment from" respondent (described thereafter as Employee) and that respondent "wants to formalize his employment relationship with, and secure a five-year employment commitment from" appellants. The contract provided that "Employer shall have the sole discretion and authority to determine what specific legal services and/or business management duties are to be performed by Employee, and to supervise such duties." The contract required that "Employee shall work exclusively for the Employer" and, upon obtaining a California real estate broker's license, "Employee shall use such License exclusively for the benefit of the Employer." The employer "shall accept and assume financial responsibility for any action performed by the Employee during the scope of this employment, and shall otherwise indemnify the Employee under Section 2802 of the California Labor Code." The employer "shall purchase and maintain, at its expense such comprehensive professional liability insurance as is appropriate to cover the acts or omission of the Employee in the normal course of his employment."

The term of the contract was five years, from August 28, 1985, until August 31, 1990. Salary was $95,000 for the first year, and increased $10,000 per year in each of the five years, culminating with a salary of $135,000 in the fifth year.

The contract's section on "termination" provided: "The Employee may be terminated only if he engages in conduct set forth in Section 2924 of the California Labor Code during the scope of his employment [Lab. Code, § 2924 provides, "An employment for a specified term may be terminated at any time by the employer in case of any willful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it"]; if the Employee is

terminated for engaging in such conduct, the Employer need not continue to pay monies owing under this Contract. [¶] . . . If the Employer terminates the Employee for any conduct other than set forth in Section 2924 of the California Labor Code, or if the Employee is constructively discharged by the Employer, the Employee shall be entitled to all compensation provided for under the terms of this Contract; however, the Employee shall use reasonable diligence to mitigate his damages."

Respondent began work under the contract in August 1985. Three months later, in November 1985, appellants discharged respondent.

At trial appellants claimed that respondent was discharged for cause. Respondent denied that he performed unsatisfactorily, and this issue was resolved in his favor by the jury's verdict.

For six weeks immediately after discharge respondent unsuccessfully looked for work by sending out resumes and looking in Daily Journal ads. He received a few responses but no offers. In January 1986, he opened his own practice in Century City.

Prior to trial respondent limited his claim to the first two years of the contract. At trial the evidence showed that during the remainder of the first year of the contract he earned $53,836 from his practice and during the second year he earned $65,846. The jury verdict of $81,401.70 was the exact amount requested by respondent, representing the difference between the first and second year salaries under the contract and respondent's first and second year outside earnings, plus certain minor additional costs for which appellants were liable under the contract.

## CONTENTIONS

Appellants' numerous contentions may be grouped in three categories. Appellants contend (1) because respondent was employed as an attorney, appellants had an absolute right to discharge respondent, subject only to paying the reasonable value of the services he performed before discharge, (2) the trial court erred in excluding certain evidence relevant to mitigation of damages, and as a matter of law respondent failed to mitigate damages, and (3) the trial court committed prejudicial misconduct during appellant Lawrence's argument to the jury on his own behalf. Finding no merit to these contentions, we affirm.

### RESPONDENT'S RIGHT TO CONTRACT DAMAGES

■ Appellants contend that, because respondent was employed as an attorney, the rule of *Fracasse* v. *Brent* (1972) 6 Cal.3d 784 [100 Cal.Rptr.

385, 494 P.2d 9] applies to this case. Relying on *Fracasse*, they contend that despite the terms of the employment contract, (1) appellants had an "absolute right" to discharge respondent, which was not a breach of contract, and (2) respondent was not entitled to contract damages but only quantum meruit, the reasonable value of the services he rendered prior to discharge.[1]

We find no merit to this argument. Although in some respects the parties had a confidential relationship and respondent had professional obligations which an attorney owes to a client, their business relationship was very different from that involved in *Fracasse*. The question here is the compensation due to respondent upon termination of the relationship. We hold that under the circumstances of this case the compensation rule of *Fracasse* does not apply, and respondent was entitled to enforce the termination provisions of the parties' negotiated employment contract.

In *Fracasse*, a client retained an attorney to prosecute a personal injury action. The client agreed to give the attorney a contingency fee out of any recovery or settlement obtained. The client discharged the attorney, who then sued for declaratory relief alleging he had a one-third interest in any subsequent recovery. The Supreme Court held that the client had an absolute right to discharge an attorney, with or without cause. "Such a discharge does not constitute a breach of contract for the reason that it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate that contract at will." (6 Cal.3d at p. 791.) The court held further that in order to prevent an unjust disaster to the client (more than two-thirds of any recovery would go to the first and second attorneys) and a windfall for the discharged attorney, the discharged attorney in such circumstances was entitled to recover only the reasonable value of services rendered prior to discharge. (*Id.* at pp. 791, 792; see *Trembath* v. *Digardi* (1974) 43 Cal.App.3d 834, 837 [118 Cal.Rptr. 124].)

In *Fracasse*, the attorney was retained to prosecute a particular proceeding. The client's absolute power to discharge the attorney was partly based on Code of Civil Procedure section 284, which involves changes of attorney "in an action or special proceeding." (*Fracasse* v. *Brent, supra,* 6 Cal.3d at p. 790.) " 'The interest of the client in the successful prosecution or defense of the action is superior to that of the attorney . . . . [T]he client is justified in seeking to dissolve that relation whenever he ceases to have absolute confidence in either the integrity or the judgment or the capacity of the attorney.' " (6 Cal.3d at p. 790.)

---

[1]Appellants raise this point under several different argument headings involving denial of their motions for judgment on the pleadings, for nonsuit and to limit evidence to the reasonable value of services, and denial of their requested jury instructions.

The contract here is very different, in the manner in which it arose, in the nature of the services to be performed, and in the manner of compensation.

Appellants conducted an ongoing substantial real estate investment business. Appellants advertised a position available for an employee. Respondent answered appellants' ad, applying for the position. The termination clause was freely negotiated between parties of relatively similar sophistication and bargaining power. (See *Blank* v. *Borden* (1974) 11 Cal.3d 963, 973 [115 Cal.Rptr. 31, 524 P.2d 127] [noting that in the contingent fee situation of *Fracasse*, an attorney often has a bargaining position vastly superior to a client]; see also *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 40 [10 Cal.Rptr.2d 183, 832 P.2d 899] (conc. opn. of Kennard, J.) [agreement negotiated between sophisticated parties of similar bargaining power].)

The contract involved terms typical of an employer-employee relationship and not typical of attorney-client contingent fee contracts. The attorney here was a salaried employee, required to work exclusively for the employer. The employer had the sole discretion to determine the employee's duties and to supervise such duties. The contract contemplated that respondent would perform not only legal services but "management duties" and real estate broker functions, all at the discretion of the employer, appellants. The employer was required to accept financial responsibility and maintain insurance for the employee's conduct in the scope of employment, and to indemnify the employee.

As to compensation, respondent was employed for a fixed term and fixed salary.

We hold that in this very different situation, *Fracasse* does not require that a salaried attorney-employee be deprived of contractual employee benefits when discharged without cause.

In *Fracasse*, the Supreme Court cited the New York high court case of *Martin* v. *Camp* (1916) 219 N.Y. 170 [114 N.E. 46] and an annotation (1957) 54 A.L.R.2d 604. (6 Cal.3d at p. 791 & fn. 3.) The *Martin* case itself, the annotation and subsequent New York authorities recognize that the *Martin* rule limiting a discharged attorney to quantum meruit does not apply "to a case where an attorney is employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of the contract." (*Martin* v. *Camp, supra*, 114 N.E. at p. 48.) The high court of New York applied that exception in *Greenberg* v. *Jerome H. Remick & Co.* (1920) 230 N.Y. 70 [129 N.E. 211], where an attorney was hired by the company as attorney and legal adviser for a period of one year

at a compensation of $5,200, payable weekly at $100. The court stated, "The contract was not that the attorney should conduct a particular suit or proceeding. . . . By the terms of the contract the attorney was to receive a specified salary for a designated term, and although it provided for professional advice and service it was in every respect more in the nature of an ordinary contract between master and servant than one for professional employment. It did not differ from contracts with other salaried employees, except in the character of the work to be performed. . . . The distinction between the contract of *Martin* v. *Camp* and the one now before us is in the fact that the one is purely for professional services, speculative in its outcome, . . . while the other is an ordinary business agreement, specific and definite in its terms, and in effect negatives the presumption that as to the client it should be deemed a contract at will." (*Id.*, 129 N.E. at pp. 212-213.)

*Greenberg* has been followed in New York. (*Prial* v. *Supreme Ct. Uniformed Off. Ass'n* (1977) 89 Misc.2d 287 [391 N.Y.S.2d 317, 318-319], affd. 91 Misc.2d 115 [397 N.Y.S.2d 528] [annual compensation under two-year retainer agreement]; *Cohen* v. *Cocoline Products* (N.Y.Civ.Ct. 1956) 150 N.Y.S.2d 815, 817 [annual retainer]; *Roth* v. *Rural Const. Corp.* (N.Y.Civ.Ct. 1953) 122 N.Y.S.2d 147, 148 [annual retainer].) In *Alpern* v. *Hurwitz* (2d Cir. 1981) 644 F.2d 943, an attorney was hired as a consultant for a designated term at a fixed monthly fee. The court applied *Greenberg* to allow the discharged attorney to enforce contract damages, stating, "It is true that where a contract creates a close confidential relationship such as exists between attorney and client, courts will sometimes read into the agreement a provision that it may be terminated by the employer at any time without cause. . . . However, even in the highly confidential relationship of attorney and client, such a provision will not be implied where the attorney has been employed under a general retainer for a fixed period to perform legal services as the need for them may arise." (644 F.2d at p. 945.)

The annotation cited in *Fracasse*, Measure or Basis of Attorney's Recovery on Express Contract Fixing Noncontingent Fees, Where He Is Discharged Without Cause or Fault on His Part (1957) 54 A.L.R.2d 604, cited the New York and other cases at section 8, pages 628-631, for the principle that, ". . . an attorney who is employed for a specified time at a stipulated sum and who is discharged without cause or fault . . . prior to expiration of the specified term may recover the sum stipulated in the contract as compensation . . . ." (See also Annot., Construction and Operation of Attorney's General or Periodic Retainer Fee or Salary Contract (1955) 43 A.L.R.2d 677.)

Here respondent was employed for a specified term at a specified fixed salary. This case is even stronger than one involving a retainer paid to an

attorney who has other clients as well. Here respondent was a true employee who worked solely for appellants to perform such duties as they in their discretion assigned. The fact that respondent owed ethical obligations toward his employer consistent with those of an attorney to a client does not itself require that *Fracasse* apply in determining the amount of compensation due upon discharge.

In this respect appellants misplace reliance on *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 622-623 [120 Cal.Rptr. 253], which they erroneously cite for the proposition (in appellants' words) that the rule of *Fracasse* "applies with full force to in-house counsel." *Goldstein* held that a former corporate general counsel could not enforce a contract to render legal services on behalf of a minority shareholder and director in a proxy fight designed to gain control of the same corporation, where the former counsel held corporate confidences and secrets relevant to the proxy fight; such representation would violate ethical requirements concerning confidential information. The court mentioned that the ethical duty toward the corporation did not dissolve merely because the attorney had been discharged as general counsel, and cited *Fracasse*, but the case had nothing to do with the compensation owed by an employer to a wrongfully discharged attorney-employee.[2]

Enforcement of the termination provisions of appellants' contract does not deprive appellants of their absolute right to remove an attorney in whom they have lost confidence from representing them in an action or proceeding. (Code Civ. Proc., § 284; *Fracasse* v. *Brent, supra,* 6 Cal.3d at p. 790.)[3] The only question here is the compensation to which respondent was entitled upon appellants' decision to dismiss respondent from his salaried position as an employee. The termination provisions of the contract, freely negotiated between the parties, provided the measure of compensation in the event of discharge for any reason other than cause as defined in Labor Code section 2924. *Fracasse* does not require that these provisions be invalidated. The measure of compensation adopted in *Fracasse* involved a different situation, a contingent fee for representing a client in a specific proceeding. "The rules ameliorating the liability of the client in contingent fee contracts are specifically based upon . . . a desire to protect the client from the risk of

[2]Two foreign authorities cited by appellants are also not in point. *Federal Sav. & Loan Ins.* v. *Angell, Holmes & Lea* (9th Cir. 1988) 838 F.2d 395, 397, was based on the Federal Savings and Loan Insurance Corporation's statutory power to *rescind* a member association's contracts. *LaRocco* v. *Bakwin* (1982) 108 Ill.App.3d 723 [64 Ill.Dec. 286, 439 N.E.2d 537, 541], involved a dissimilar agreement, an alleged oral contract for lifetime employment which contained no definite terms regarding compensation and which was construed to be terminable at will.

[3]Indeed, the contract expressly recognizes that appellants have sole discretion to determine what matters respondent will be assigned.

excessive or double payment for a single result . . . ." (*Trembath* v. *Digardi, supra,* 43 Cal.App.3d 834, 837.) The trial court did not err in rejecting *Fracasse's* application to this case.

## MITIGATION OF DAMAGES

Appellants raise three issues concerning mitigation of damages. They contend that as a matter of law respondent failed to make reasonable efforts to find comparable employment. They further contend that the trial court erroneously refused to admit evidence of respondent's earnings during the last three years of the contract and of respondent's lawsuit against another attorney seeking additional compensation for work respondent did during the first two years. There is no merit to these contentions.

### Opening Law Practice

Respondent testified that for six weeks after his discharge he sought other employment by sending out resumes and watching ads in the Daily Journal, but received no offers. He ultimately found work by opening his own office in January 1986.

■ Appellants contend the evidence "does not support the verdict." They contend respondent should have looked harder and longer for a job as an employee before relying instead upon opening his own practice, which they characterize as a risky venture with inevitably low early earnings.

The burden is on the employer to prove that substantially similar employment was available which the wrongfully discharged employee could have obtained with reasonable effort. (*Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181-182 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615].) The rule placing this burden of proof on the employer is old and firmly established. (*Vitagraph, Inc.* v. *Liberty Theatres Co.* (1925) 197 Cal. 694, 699 [242 P. 709]; Wrongful Employment Termination Practice (Cont.Ed.Bar 1987) § 3.27, p. 82.) The burden was not shifted to respondent merely because the contract explicitly recognized "Employee shall use reasonable diligence to mitigate his damage." (See *Alpha Beta Food Markets* v. *Retail Clerks* (1955) 45 Cal.2d 764, 771 [291 P.2d 433] [contract recital recognizing existing law].)

Appellants had the burden of proof but produced no evidence that comparable employment was available to respondent. They cannot now claim the

evidence is insufficient. (*Carroll* v. *Civil Service Com.* (1973) 31 Cal.App.3d 561, 565 [107 Cal.Rptr. 557].) Respondent testified he looked for employment for six weeks, received no offers, then opened up his own office. Substantial evidence supports the jury's apparent conclusion that appellants did not meet their burden to prove respondent failed to mitigate damages. (*Gonzales* v. *Internat. Assn. of Machinists* (1963) 213 Cal.App.2d 817, 823 [29 Cal.Rptr. 190].)

### Third, Fourth, and Fifth Years

■ Appellants contend the trial court erroneously "held" that respondent's earnings during the third, fourth, and fifth years of the contract were irrelevant. We do not reach the merits of this issue, because it was not adequately preserved in the trial court.

All three appellants (Lawrence, Howell, and the partnership of Lawrence & Howell Investments) were originally represented by Attorney Steven L. Krongold. Prior to the commencement of trial appellant Lawrence, also an attorney, was granted permission to represent himself; Attorney Krongold continued to represent Howell and the partnership. Respondent's attorney announced just prior to trial that respondent was limiting his claim to the first two years of the contract. Attorney Krongold voiced no objection. Thereafter, appellant Lawrence mentioned, "I would like to raise one point. . . . I do not know what earnings [respondent] had in the third year and the fourth year or fifth year." The court replied, "He is not making any claim for those years, so it is irrelevant." Krongold added, "It is just first and second year." Lawrence said, "What I am saying is maybe he is suing on a total contract and maybe the earnings in the third and fourth or fifth year were such that they would bring all of his earnings for the five-year period to a sum beyond which he has no cause of action." The court replied, "[T]hat is not the way it works. . . . The salary is set by the year . . . . [I]t doesn't relate back." Lawrence said, "*I see. . . . No problem.*" (Italics added.)

Under the circumstances, appellants cannot now contend that the court's theory of damages was wrong or that the court erroneously excluded evidence of subsequent earnings. (See *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90, 107 [199 Cal.Rptr. 383, 46 A.L.R.4th 521] [cannot change theory of damages after trial].) "A party on appeal cannot successfully complain because the trial court failed to do something which it was not asked to do." (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 603 [207 Cal.Rptr. 728].) On behalf of appellants Howell and the partnership, Attorney Krongold had no objection to excluding all issues relating to the later

years. Appellant Lawrence raised the point only tentatively, couching his discussion in the wan acroteleutic "maybe." (*Ford* v. *Gouin* (1992) 3 Cal.4th 339, 369 [11 Cal.Rptr.2d 30, 834 P.2d 724] (dis. opn. of Mosk, J.).) He appeared satisfied by the explanation from the court and Krongold. ("I see. . . . No problem.") Lawrence did not state that he thought the court was wrong or that he objected. (*In re Cheryl E., supra*, at p. 603 [counsel did not attempt "to disabuse the court of this notion but appeared to be in agreement"].) At no time did Lawrence seek to introduce evidence on the issue. Contrary to appellants' contention, this situation is not controlled by the principle that an offer of proof is excused as futile where the court has clearly indicated it would exclude evidence of a particular type. (Evid. Code, § 354, subd. (b); *Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 91 [147 P.2d 604].) Rather, after a mere inquiry, Lawrence acquiesced in the court's remarks and never made clear that he believed the court wrong or that he actually wanted to introduce evidence. (See *Taylor* v. *Union Pac. R.R. Corp.* (1976) 16 Cal.3d 893, 900-901 [130 Cal.Rptr. 23, 549 P.2d 855] [acquiescence waiving jury trial].)

### *Lawsuit Against Attorney*

In mitigating damages during the first two years, respondent performed legal work for another attorney. That attorney was called as a defense witness, testifying that during that period he paid respondent approximately $50,000. He further testified that respondent had billed him approximately $270,000 for these services, which he refused to pay. In reply, respondent testified that he had begun working for the attorney without any definite agreement on an hourly rate, and that respondent did indeed contend the attorney owed him more, which he refused to pay.

Although the court *permitted* this testimony as to the amounts paid to or earned by respondent, appellants now contend the court erred by prohibiting any reference to the fact that respondent had *sued* the attorney for more fees. Appellants appear to contend that the fact respondent had sued for more fees increased the possibility he would obtain them, and that the jury should consider this evidence in determining whether the damages should be reduced by those claims. The trial court apparently rejected any such reasoning, on the ground the outcome of that lawsuit was speculative.

Having permitted the evidence that respondent claimed to be entitled to more fees from the attorney and had billed him $270,000, the trial court did not abuse its discretion in excluding further evidence of a lawsuit over the fees. The trial court properly concluded the outcome of the other lawsuit

involved speculation. (See BAJI No. 14.60 (1992 re-rev.) [jury not entitled to award speculative damages for future loss or harm which "although possible, is conjectural or not reasonably certain"].) The court could also properly conclude that for this purpose the existence of a lawsuit was irrelevant, or, if remotely relevant, its probative value was outweighed by factors supporting exclusion. (Evid. Code, §§ 210, 352.) Furthermore, since evidence of respondent's *claims* against the attorney was permitted, appellants were not prejudiced by exclusion of the additional fact that a lawsuit had been filed. (Evid. Code, § 354.)[4]

### TRIAL COURT'S REMARKS DURING LAWRENCE'S JURY ARGUMENT

Following Attorney Krongold's argument to the jury on behalf of appellants Howell and the partnership, appellant Lawrence argued to the jury on his own behalf. In just the first five transcript pages, Lawrence made eight improper arguments, to which the court sustained respondent's objections. Lawrence referred to numerous facts not in evidence and points which were irrelevant. (*Malkasian* v. *Irwin* (1964) 61 Cal.2d 738, 747 [40 Cal.Rptr. 78, 394 P.2d 822]; *Brokopp* v. *Ford Motor Co.* (1977) 71 Cal.App.3d 841, 862 [139 Cal.Rptr. 888, 93 A.L.R.3d 537].) Several of these involved Lawrence's theory that the contract could be avoided on the ground that respondent had misrepresented his prior experience in the job interview, an issue which was not properly in the case because it was not pleaded.

After sustaining an objection to Lawrence's repetition of this improper line of argument, the court, exasperated at Lawrence's conduct, but in an effort to allow the trial to proceed to a conclusion, said, "I'll tell you what, Mr. Lawrence, why don't you just take 15 minutes and say whatever you want to. You are not to say [*sic* you are not going to say] anything that is relevant to any issue in this case. So why don't we just take 12 minutes, and let's let Mr. Lawrence say whatever he wants to say without further objection."

Lawrence immediately reiterated the prohibited theory that there was no valid contract because respondent misrepresented his experience. Respondent's counsel objected again, to which the court responded, "Let him say

[4]While this appeal was pending, appellants moved to augment the record to take judicial notice that, subsequent to the instant trial, respondent obtained a favorable judgment in his lawsuit against the attorney. We denied appellants' motion to augment the record. An appellate court reviews the correctness of the judgment based on the record at the time of its rendition. Matters occurring after judgment are ordinarily irrelevant and should not be considered. (*De Angeles* v. *Roos Bros., Inc.* (1966) 244 Cal.App.2d 434, 443 [52 Cal.Rptr. 783] [refusing to consider discharged employee's additional earnings after trial].)

whatever he wants. The jury will be instructed that it is a contract, so say whatever you feel like saying. You have got 11 minutes left."

■ Appellants contend these remarks constituted judicial misconduct, as discourteous and intemperate toward a party, and as indicating partiality.[5]

Appellants did not object to the court's remark or ask the court to withdraw it or admonish the jury. They now assert that no objection was required because the alleged misconduct was by the court itself (*Berguin* v. *Pacific Elec. Ry. Co.* (1928) 203 Cal. 116, 122 [263 P. 220]), but they state this rule too broadly. (*Ward* v. *DeMartini* (1930) 108 Cal.App. 745, 751 [292 P. 192].) Ordinarily, a party complaining of improper remarks by a trial judge must object and draw the court's attention to the impropriety before the close of trial, or waive the point on appeal. This is in order to give the trial court an opportunity to cure the injury by instructing the jury or otherwise. (*Estate of Golden* (1935) 4 Cal.2d 300, 310-311 [48 P.2d 962]; *Etzel* v. *Rosenbloom* (1948) 83 Cal.App.2d 758, 762 [189 P.2d 848].) Only when an admonition could not remove the prejudicial effect, or it is apparent that a request would be fruitless, can the complaining party dispense with objecting. (*Estate of Golden, supra,* 4 Cal.2d at p. 311; *Etzel* v. *Rosenbloom, supra,* 83 Cal.App.2d 758; *People* v. *Melton* (1988) 44 Cal.3d 713, 753 [244 Cal.Rptr. 867, 750 P.2d 741].) We do not regard this as such an exceptional case. (*Estate of Golden, supra,* 4 Cal.2d 300.) If the court's remark implied the jury should disregard all of Lawrence's arguments, and if this implication had been brought to the court's attention in a timely manner, the court might have withdrawn the remark and reminded the jury that the instructions would frame the appropriate issues in the case.

In any event, upon examination of the entire record we do not find that the remarks caused a miscarriage of justice requiring reversal of the judgment. (*Ward* v. *DeMartini, supra,* 108 Cal.App. 745, 751; *Germ* v. *City & County of San Francisco* (1950) 99 Cal.App.2d 404, 415 [222 P.2d 122].) Lawrence largely brought the problem upon himself by continuing to argue improper matters even after he knew from the sustaining of objections that his theory of the case was illegitimate and not within the issues. (*People* v. *Dickenson* (1962) 210 Cal.App.2d 127, 138 [26 Cal.Rptr. 601].)

Before jury deliberations began the court instructed the jury that "I have not intended by anything I have said or done or by any questions that I have asked, to suggest how you should decide any questions of fact or that I

---

[5]Although the remarks were directed only toward Lawrence, all three appellants assert they suffered prejudice as a result. We disagree. Howell and the partnership were represented by separate counsel, who separately argued on their behalf.

believe or disbelieve any witness. [¶] If anything I have done or said has seemed so to indicate, you must disregard it and form your own opinion." (*People* v. *Dickenson, supra,* 210 Cal.App.2d at p. 139; *Ward* v. *DeMartini, supra,* 108 Cal.App. 745.) The issue of the court's remarks and the resulting prejudice, if any, was raised on the motion for new trial. At the hearing on the motion for new trial the court conceded that its remark had not been "the happiest remark that I ever made." But the court was satisfied the overall effect was not prejudicial to the verdict, and so denied the motion for new trial. Respondent had a strong case because the contract language was clear and appellants presented no evidence to support their burden to show respondent failed to mitigate damages. Most of the issues Lawrence sought to raise in his jury argument were irrelevant or outside the evidence. There is no reasonable probability the verdict would have been more favorable in the absence of the court's remarks. (*Ward* v. *DeMartini, supra,* 108 Cal.App. at pp. 751-752.)

## DISPOSITION

The judgment is affirmed.

Woods (A. M.), P. J., and Epstein, J., concurred.