Filed 2/3/25  P. v. Cruz CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B330083 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA112124-01) |
| v. | |
| RICARDO CRUZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith Levey Meyer, Judge.  Affirmed.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Ricardo Cruz, convicted of first degree burglary, was sentenced to a term of imprisonment of 25 years to life. He appeals, raising a number of issues. We find no error and affirm.

## PROCEDURAL HISTORY

An information charged Cruz with first degree burglary. He was also charged with having been convicted of two serious felonies under Penal Code[1] section 1192.7, subd. (c)(18), i.e., first degree burglary. The two prior convictions were also alleged as Three Strikes convictions under sections 667 and 1170.12.

On the court's own motion and over defense objection, the trial court declared a doubt as to Cruz's mental competence and suspended criminal proceedings. Following a report by Atascadero State Hospital and a finding by the trial court that Cruz was competent to stand trial, criminal proceedings resumed.

A jury found Cruz guilty of first degree burglary as charged. The trial court found he had been convicted of the two prior felonies.

The trial court sentenced Cruz under the Three Strikes law to state prison for 25 years to life and imposed various fines and fees. The court also denied appellant's *Romero*[2] motion and struck the two 5-year serious felony enhancements. This appeal followed.

---

[1]     Undesignated statutory references are to the Penal Code,

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529–530 (*Romero*).

2

# FACTS

I.    *The Charged Offense*

On June 10, 2019, Micah Childs lived in a studio apartment on Cerritos Avenue in Long Beach.  When she returned home at about 9:30 p.m., she saw Cruz sitting on the stairs.  She had not seen him before and did not know who he was.  Cruz did not speak to her but she said "Hello."  She entered her apartment where she was living alone.

There were two doors to her apartment.  There was a black security door in front of an interior wooden door.  She locked the security door but left the wooden door open.  It was hot and she did not have air conditioning.

A couple of hours later, her friend Hector arrived.[3]  Childs and Hector spent time together in the apartment.  Cruz was sitting on the top of the stairs right in front of the door to her apartment.  At trial Childs was asked whether she thought Cruz "was looking into your apartment when you and Hector were having an intimate moment" and whether she would characterize appellant as a "voyeur."  She said yes.  Hector told Cruz he could not be there and Cruz left.  Childs characterized Hector as a boyfriend or someone with whom she was intimate at this time.

Hector left Childs's apartment around midnight.  She closed and locked the security and wooden doors and went to bed.

Within a half hour or so, Childs heard the sound of a plant pot falling off her TV stand which was at the base of a window.  She got out of bed and went to the window.  She saw Cruz with his hands "coming into the window."  Cruz's hands were on the

---

[3]    Hector appears in this account only by his first name.

3

windowsill.  The  window was partially open.  A body could fit through the window.  The blinds were spread a little bit and the screen was off the window.

Childs called the police.  Childs reported a man was trying to break in her window.  It appeared Cruz had opened the window while she was sleeping and was going to crawl into the house.  Her window had been closed and locked and she did not know how he had opened it.  Cruz seemed shocked that Childs was awake.  Childs closed the window.  No words were exchanged between the two, and Cruz did not attempt to stop Childs from closing the window.  Childs felt anxious and afraid.

The Long Beach police responded to Childs's call and found Cruz behind a gate at the rear of the complex.  The officers detained and handcuffed him.

II.    ***Two Previous Uncharged Burglaries***

Evidence of two prior burglaries was admitted over defense objection to prove intent under Evidence Code section 1101, subd. (b).  The trial court gave limiting instruction CALCRIM No. 375 which directed the jury not to consider the evidence of uncharged crimes for the purpose of concluding that Cruz had a bad character or was disposed to commit crime.

A.    <u>The 2013 burglary</u>

Long Beach Police Officer John McVay was on duty on April 26, 2013, when he searched Cruz and found him with a laptop computer that was turned on.  The screensaver of the laptop was a photograph of a person other than Cruz with a dog.

After waiving his constitutional rights, Cruz told Officer McVay that his girlfriend Alicia allowed him to borrow the laptop.  When Officer McVay asked about the male subject on the

4

screensaver, Cruz said, "Maybe that's Alicia's boyfriend." Officer McVay said, "I thought you said Alicia was your girlfriend." Cruz said, "um," and did not respond.

In the early morning hours of April 27, 2013 (the next day), Officer McVay was dispatched to an address on East Second Street to take a burglary report. When Officer McVay arrived, Carlos Tejada and his dog were on the porch. They were the same person and dog that Officer McVay had seen in the picture on the laptop. Officer McVay saw a screen on the ground next to a bedroom window. The blinds were "shuffled askew to the side."

After Officer McVay took the burglary report, he reinterviewed Cruz. McVay asked who Alicia was but Cruz could not provide a name, phone number or description. After Cruz was booked into the Long Beach city jail, McVay again asked about the laptop. Cruz said a friend had told him he could borrow the laptop.

Cruz said he was told the laptop "would be at a location" but did not provide an address. When Cruz arrived, no one was there. Cruz knocked on a window and saw the laptop inside. He removed the screen, opened the window, moved the blinds, and took the laptop because he was told he was allowed to borrow it.

B.    The 2015 burglary

On August 17, 2015, Jessica McCarns lived with her two-year-old daughter in an apartment on Alamitos Avenue.

That night McCarns's daughter was at her father's house. At 2:30 a.m. or 3:00 a.m., McCarns heard the blinds in her daughter's bedroom going back and forth. At first, McCarns thought it was just the wind. When she realized it was not the wind, McCarns got out of bed and grabbed a butcher knife from the kitchen. McCarns went toward her daughter's room. The

5

blinds moved and she saw Cruz had tried to stick his head through the bars. McCarns screamed, "Get out of here." McCarns "freaked out" and screamed, "I'll stab you. I'll kill you. I'll do whatever I have to, just go away." Cruz had shoved his face between the bars. McCarns did not know Cruz and had never seen him before.

McCarns's home security system was going off. Cruz "got more frantic and angry, and he was kind of shaking the bars because he couldn't get in." "He tried to shake the door open to see if he could get through [to] the knob. It wasn't turning. He couldn't get the door open. That didn't work. He tried the side window. That didn't work." ~(RT 406)~

"He kept coming back, over and over again. I [McCarns] called the police. He would run, and then they would come, and . . . tell me they thought I was making it up. I called them 15, 20 times over two days. He came back over and over again. [¶] I had a conversation with him [Cruz]. I asked him: 'Don't you have a family? Why are you doing this to us' . . . I was terrified. I didn't leave my house for days." McCarns said, "He came back every time they [the police] would leave . . . . [¶] . . . [¶] . . . Sometimes it would be five minutes and he was back. [He tried] different windows to get in."

On August 17, 2015 Long Beach Police Officer Mark Brunson was dispatched to McCarns's apartment. McCarns was shaking and trembling and crying hysterically. Officer Brunson saw signs of forced entry in that two window screens had been pried.

On or about August 18, 2015, Long Beach Police Detective Lisa Schumaker interviewed Cruz about the McCarns burglary. Cruz initially denied, but later admitted, being there and "stated

6

that he was waiting for someone at one point." Detective Schumaker asked Cruz if he went through the window. Cruz said: " 'I was there, okay. I was there, but I didn't take nothing.' " Detective Schumaker asked him what he was going to do there, and he said, " 'probably nothing.' " "I inquired if he was planning on—I used the word 'getting with' the person that lived there, and he said he wasn't sure."

Detective Schumaker also asked why Cruz had condoms and lubricant. According to Detective Schumaker, Cruz said he had lots of girlfriends.

### III. *The Defense Case*

Cruz did not testify.

Dr. Ann Walker, a psychologist appointed at the request of the defense, evaluated Cruz in November 2019. Dr. Walker diagnosed Cruz with schizophrenia, borderline intellectual functioning, and "stimulant alcohol and cannabis-use disorders." Dr. Walker explained that schizophrenia "fluctuates a great deal. People have more lucid moments, and they have more kind of crazy moments." She testified schizophrenia is not a steady state and one can usually observe signs of schizophrenia, such as confused thinking and pressured speech.

## DISCUSSION

### I. *It Was Not Error to Instruct the Jury That Cruz Could Be Found Guilty of Burglary If He Intended to Rape Childs*

Cruz contends it was error to instruct the jury that it could find him guilty of burglary if he intended to rape Childs.

The jury was instructed that to convict Cruz of burglary, the jury had to find that he entered Childs's apartment with

7

intent to commit larceny or any felony, including rape.  The instruction states that Cruz need not have actually committed larceny, any felony, or rape as long as he entered with the intent to do so.

The prosecutor argued that Cruz intended to rape Childs.  When the defense contended that Cruz only intended to peek, the prosecutor argued in rebuttal that a man breaking into a young woman's apartment at 2:30 in the morning while she was alone could intend to commit only larceny or rape.[4]

A trial court must give a requested instruction if it is supported by substantial evidence, i.e., "evidence sufficient to deserve jury consideration."  (*People v. Marshall* (1997) 15 Cal.4th 1, 39.) We review claims of instructional error de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)

Evidence abounds that Cruz harbored nefarious plans as he sat outside Childs's apartment.  To begin with, he had no legitimate reason to hover outside Childs's apartment.  They did not know each other.  It is reasonable to infer that something must have been brewing in his head that boded ill for Childs.  And if he had no reason to be outside her apartment, he certainly did not have a legitimate reason to enter her apartment at 2:30 in

---

[4]     "Is it reasonable to think that [Cruz is] sitting outside this woman's apartment while she was having an intimate moment with her boyfriend and then comes back later, when the boyfriend is gone, and tries to get into her apartment for anything other than, in the best case scenario, a theft, and in the worst case scenario, a rape? [¶] . . . [¶] A man breaking into a young woman's apartment at 2:30 in the morning, while she is alone could only be, in this case, based upon what you heard, for a theft, as I said, the best case scenario, and/or a rape."

the morning.  He knew Childs was alone, as Hector had left at midnight.  Cruz therefore knew Childs was vulnerable.

Contrary to Cruz's argument, the facts of this case are not innocuous.  Childs was alone at home in the small hours of the morning.  Cruz had managed to open a window that had been closed and locked and he was in the process of entering the apartment through that window.  No one would conclude anything other than Cruz intended to do harm, which certainly included the possibility of a forcible sexual encounter.

It is reasonable to suppose that Cruz's observation of the "intimate" encounter between Childs and Hector suggested to Cruz that Childs was available for a sexual encounter, whether or not the encounter on Childs's part was voluntary.

We find Cruz's reliance on *People v. Greene* (1973) 34 Cal.App.3d 622 (*Greene*) and like authorities unpersuasive.  In *Greene,* the court reduced a conviction for assault with intent to commit rape to a simple assault.  (*Id.* at pp. 653–654.)  The court's conclusion was based on the tentative nature of the defendant's approach to victim Linda[5] and by comparing this

---

[5]  "The defendant, who approached from the direction in which Linda was walking, put his arm around her waist and turned her around.  She thought his conduct was unusual, and she was startled and afraid.  Defendant spoke in a soft voice and said, 'Don't be afraid.  I have a gun.  Don't move.' . . . At his request she placed her right arm around his waist and they started walking in the opposite direction from which she had been headed.  Linda asked the defendant, 'What do you want?' . . . and he replied, 'I just want to play with you.' . . . Linda attempted to get away and shook her head and said 'No, no.'  The defendant told her to stop it and be quiet.  Linda remained quiet and then broke from defendant's embrace without a struggle,

approach to the one he had employed against another victim, Miss K. Defendant had repeatedly told Miss K. that he wanted to have sex with her (*id.* at pp. 652–653), something he had not said to Linda.

There is no comparison between the situations in *Greene* and the case at bench. This case involved a woman alone in her apartment in the small hours of the morning with no readily available means of escape. *Greene*, on the other hand, was an actual encounter between the defendant and the victim from which the victim could and did easily escape. While there was a substantial body of uncontested facts which enabled the *Greene* court to conclude that the crime was a simple assault (see *Greene, supra*, 34 Cal.App.3d at p. 642), the case at bench involved the more limited inquiry whether it was reasonable to infer from the evidence that appellant *intended* to rape Childs. Rather than concentrating on what the defendant did or did not do vis-a-vis *Greene*, the inquiry in this case is whether it is a reasonable inference from the evidence that Cruz intended to rape Childs.

It was reasonable to infer from the circumstances here that Cruz harbored the intent to rape Childs once he gained entry into her apartment.

## II.  *It Was Not Error to Admit Evidence of Other Burglaries to Prove Intent*

Cruz contends it was error to admit evidence of two other uncharged burglaries.

---

screamed and ran to a friend's home. According to Linda she only walked with the defendant past a couple of houses, and the whole incident took no more than six or seven minutes." (*Greene, supra,* 34 Cal.App.3d at p. 650.)

Whether evidence of uncharged offenses is admissible depends in part on whether the charged and uncharged offenses are similar.  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 [charged and uncharged offenses must be similar].)  The degree of similarity depends on the purpose for which evidence of the uncharged offense is introduced.  The statute lists multiple purposes for the introduction of such evidence,[6]  intent being one of them.  "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*Ewoldt,* at p. 402.)  Repetition of the same act tends to exclude accident or inadvertence and confirms an intent to perform the act.  (*Ibid.*)  The charged and uncharged misconduct must be sufficiently similar to support the inference that the defendant harbored the same intent.  (*Ibid.*)  "[T]he events need only be 'roughly similar,' i.e., similar enough to make it unlikely that each, or any, of them occurred innocently."  (*People v. Rocha* (2013) 221 Cal.App.4th 1385, 1396.)

Evidence Code section 352 may also limit the admission of evidence of uncharged offenses.  Under Evidence Code section 352, a court may exclude evidence otherwise admissible under Evidence Code section 1101, subdivision (b) if its probative value is "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create

---

[6]     "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . other than his or her disposition to commit such an act."  (Evid. Code, § 1101, subd. (b).)

substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

Rulings under Evidence Code sections 352 and 1101 are reviewed for abuse of discretion. *People v. Rogers* (2013) 57 Cal.4th 296, 326.) The trial court's ruling will not be disturbed unless the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*Ibid.*)

We find no error in the admission of evidence of the two uncharged burglaries. The uncharged offenses are sufficiently similar to the charged offense to warrant the admission of the former into evidence. All three offenses involved entry through a window. Thus, the modus operandi is common to all three burglaries. (*People v. Delgado* (1992) 10 Cal.App.4th 1837, 1846 [entry through window].) The 2015 burglary involved a woman alone at night in her apartment, just as in the charged offense, in addition to entry through a window. Here, again, is a substantial similarity between uncharged and charged offenses.

Appellant cites *People v. Dryden* (2021) 60 Cal.App.5th 1007 (*Dryden*) and *People v. Lopez* (2011) 198 Cal.App.4th 698 (*Lopez*) for the proposition that mere similarity between the charged and uncharged offenses does not necessarily meet the " 'sufficiently similar' " requirement of Evidence Code section 1101 or satisfy the balancing test under Evidence Code section 352.

As an abstract proposition, this is true enough but neither case is like the case at bench.

In *Dryden*, the prosecution successfully sought the admission of two uncharged offenses to prove that the defendant manufactured the claim of self-defense to the charged offenses.

(*Dryden*, *supra*, 60 Cal.App.5th at p. 1019.)  The charged offenses in *Dryden* occurred in 2013 and were two counts of assault with a deadly weapon that arose out of an altercation with multiple parties outside Jack in the Box and Wienerschnitzel restaurants at night.  (*Id.* at pp. 1014–1016.)  The uncharged offense that occurred in 2007 was an altercation between the defendant and his father while the defendant sought entry into his father's home by force.  (*Id.* at p. 1020.)  The uncharged offense that occurred in 2012 was an altercation between defendant and a homeless person at a bus stop where the defendant struck the victim with a cane or walking stick.  (*Id.* at pp. 1019–2020.)  The court found the 2007 offense remote and dissimilar and therefore not admissible under Evidence Code section 1101.  It found the 2012 offense inadmissible under Evidence Code section 352.  (*Dryden*, at p. 1013.)  By contrast, the uncharged offenses in the case at bench were residential burglaries where the defendant sought entry by means of a window, which was the modus operandi in the charged offense. The added similarity was that in both the 2015 burglary and the charged offense the victim was a woman home alone at night.

In *Lopez*, the charged offense was a first degree burglary of a residence where purses were stolen from a kitchen around 4:40 a.m.  (*Lopez*, *supra*, 198 Cal.App.4th at p. 703.)  The uncharged offenses were theft of a purse from a car and theft of a car.  (*Id.* at pp. 702–703.)  The court found there could be no innocent explanation for the charged first degree burglary. For this reason, the prejudicial effect of the uncharged offenses outweighed their probative value.  (*Id.* at p. 715.)  That is, evidence of the uncharged offenses had no probative value because there was no issue about the intent to commit the

13

charged offense of first degree burglary. In the case at bench, evidence of intent to commit first degree burglary was to an extent equivocal; Cruz hovered outside the apartment for no openly discernible reason until he was told by Hector to go away. He also abandoned his entry into the apartment through the window, once he saw that Childs was awake and alert. This means that his intent to commit burglary may well have been doubtful. In that case the uncharged offenses supplied more evidence of intent to commit the charged burglary.

Cruz contends the trial court's failure to weigh prejudice against probative value under Evidence Code section 352 was error. It is true that in ruling on the admissibility of the uncharged offenses, the trial court did not expressly state that it had weighed prejudice against probative value. However, "the trial judge need not expressly weigh prejudice against probative value—or even expressly state that he has done so." (*People v. Mickey* (1991) 54 Cal.3d 612, 656.) We assume the trial court did weigh prejudice against probative value. As noted, evidence of intent to commit the charged offense was to a degree equivocal, which lent considerable probative value to evidence of the uncharged burglaries. In addition, the uncharged offenses otherwise met the requirements for admission at this trial.[7]

---

[7] "[A]dmission of other crimes evidence cannot be justified merely by asserting an admissible purpose. Such evidence may only be admitted if it '(a) "tends logically, naturally and by reasonable inference" to prove the issue upon which it is offered; (b) is offered upon an issue which will ultimately prove to be material to the People's case; and (c) is not merely cumulative with respect to other evidence which the People may use to prove the same issue.' " (*People v. Guerrero* (1976) 16 Cal.3d 719, 724.)

14

Cruz contends that evidence of the 2013 burglary should not have been admitted because this burglary was not similar to the charged offense. The cardinal similarity between the 2013 burglary and the charged offense was that appellant gained entry through the window. The modus operandi of the offender is an important feature of any crime. While there are differences between the 2013 burglary and the charged offense, the modus operandi is the same.

Appellant also challenges the admission of the 2015 burglary. Here the similarities exceed modus operandi. The 2015 burglary and the charged offense are virtually identical in that both involve residences of women alone at night.

We conclude the trial court did not abuse its discretion in admitting evidence of the 2013 and 2015 burglaries.

III. ***It Was Not Error to Admit Evidence of Condoms and Lubricant Found on Cruz After His Arrest for the 2015 Burglary***

Cruz contends that evidence that he carried condoms and lubricant when arrested for the 2015 burglary inflamed the passions of the jury by tarring him as a rapist.

A trial court has broad discretion in deciding whether to exclude evidence under Evidence Code section 352. (*People v. Jones* (2013) 57 Cal.4th 899, 947.) We review the decision to admit this evidence to determine whether this discretion was abused.

Cruz states that the only reason condoms and lubricant could be relevant is if appellant harbored an intent to rape Childs. That is right. Because, as we have found, the circumstances suggest he harbored such an intent, the condoms and lubricant are relevant. That many young men may carry

15

such items in their pockets does not render this evidence irrelevant. The test of relevancy is whether the evidence tends logically, naturally or by reasonable inference to establish a material fact, not whether the fact is conclusively proven. (*People v. Yu* (1983) 143 Cal.App.3d 358, 376.) That Cruz was prepared to engage in sexual intercourse when he engaged in another similar burglary is a material fact in deciding whether he had the intent to do so with Childs.

We find the probative value of the evidence outweighed its prejudicial effect. And the jury was instructed not to let bias, sympathy or prejudice influence its decision.

IV. ***Cruz Has Forfeited the Claim That the Court Erred in Instructing the Jury That It Could Consider Prior Burglaries as to Motive, Plan or Scheme***

The trial court instructed the jury with CALCRIM No. 375 which states: "If you decide that [appellant] committed the uncharged offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether: [¶] [Appellant] acted with the intent to commit the offense alleged in this case; or [¶] [Appellant] had a motive to commit the offense alleged in this case; or [¶] [Appellant] had a plan or scheme to commit the offense alleged in this case."

The court specifically inquired of defense counsel whether she was satisfied with CALCRIM No. 375. She said yes; she did not request that the instruction be limited to intent only; and she did not object to the instruction.

We fail to see why this instruction was in error, let alone prejudicial error, as Cruz contends. It is a correct statement of the law. If motive, plan or scheme were not at issue, the

16

instruction was surplusage.  In any event, the issue has been forfeited because Cruz specifically agreed to the instruction.

V.   ***The Evidence Did Not Support an Instruction on Attempted Burglary***

The court declined to give an instruction on attempted burglary.  Cruz claims he never "fully entered the house" and that the evidence is that he *tried* to enter the apartment.

A trial court has the duty to instruct on a lesser offense included in the charged offense if there is substantial evidence that the defendant is guilty only of the lesser offense.  (*People v. Shockley* (2013) 58 Cal.4th 400, 403.)  Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense.  (*Ibid.*)  The court need instruct the jury on a lesser included offense only when there is substantial evidence that an element of the charged offense is missing and that the defendant is guilty of the lesser offense.  (*Id.* at p. 404.)

The jury was instructed on the entry element of burglary: "a person enters a building if some part of his body . . . penetrates the area inside the building's outer boundary."  (CALCRIM No. 1700.)  "A building's outer boundary includes the area inside a window screen."  (*Ibid.*)  Hence, "[e]ntry that is *just barely* inside the premises . . . is sufficient."  (*People v. Valencia* (2002) 28 Cal.4th 1, 15 (*Valencia*), disapproved on another ground in *People v. Yarbrough* (2012) 54 Cal.4th 889, 894; see also *Magness v. Superior Court* (2012) 54 Cal.4th 270, 273 ["the slightest entry by any part of the body . . . is sufficient"].)

Childs testified that the screen was off and Cruz's hands were on the windowsill.  "[P]enetration into the area behind a window screen amounts to an entry of a building within the

17

meaning of the burglary statute." (*Valencia, supra,* 28 Cal.4th at p. 13.) The evidence did not support an instruction on attempted burglary.

VI. ***Cruz Has Forfeited the Claim That the Court Improperly Commented on the Evidence***

Cruz contends that the trial court improperly commented on the evidence. The comment in question was made during the direct examination of Detective Schumaker who was called to testify about the 2015 burglary. The prosecutor asked Detective Schumaker whether she had asked Cruz if he knew anyone at that location to which he replied that he did not know anyone there. Schumaker then asked Cruz if he went through the window, which he initially denied. He later admitted he had been there. Cruz went on to say that he did not take anything. The prosecutor's next questions were:

"Q. At any point, did he ask you what the charges were?

"A. He did.

"Q. What did he say about—

"Ms. Bonillo [defense counsel]: Your Honor, this does not go to intent.

"THE COURT: Overruled.

"I can see how it could, actually."

Cruz did not object to the trial court's comment. "It is generally considered unfair to the trial court and the adverse party to consider procedural defects that could have been raised below but were not." (*Menefee v. County of Fresno* (1985) 163 Cal.App.3d 1175, 1182.) If the court's comment does not amount to a "procedural defect," the nearest analogy is to judicial misconduct. But here, too, an objection is required. (*Chyten v.*

18

*Lawrence & Howell Inv.* (1993) 23 Cal.App.4th 607, 620.) This issue is forfeited.

VII. ***It Was Not an Abuse of Discretion to Deny Cruz's Romero Motion***

Cruz contends the trial court abused its discretion when it denied his motion under *People v. Romero, supra*, to strike his prior strike convictions. He contends his current burglary conviction was caused by schizophrenia and the symptoms of substance abuse, which, he contends, are reasons for a lesser sentence.

A trial court's refusal to strike a prior strike is reviewed for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) The party attacking the sentence must clearly show that the decision was irrational or arbitrary. In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives. A decision will not be reversed merely because reasonable people might disagree. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978; see generally 3 Witkin, Cal. Criminal Law (5th ed. 2024), Punishment, § 521, pp. 729–730.)

The trial court was not unaware of Cruz's history of mental and emotional problems. The court acknowledged that Cruz has "mental health issues" and that some of these issues caused the crime of which he was convicted. However, the trial court found that Cruz had not sought medication through the court system or any other type of system "to be able to regulate his mental health issues to the point where he stops being a danger to society." The trial court noted that society needed to be protected from persons

19

with mental health issues who did not address those problems. "He's had a lifetime where he could have gotten treatment, and he didn't do it. . . . [¶] He's not taken responsibility, whatsoever, for his mental health issues." In fact, the court noted, Cruz had caused Childs mental health problems that would last for the rest of her life. The trial court closed by stating it needed to protect society.

Cruz's strikes were not remote in time. He was convicted of his first burglary in 2013, sentenced to two years in prison and paroled in 2014. He was convicted of the second burglary in 2015 and sentenced to four years in prison. While on parole from the second conviction, he committed the instant burglary in 2019. There was no "crime-free cleansing period of rehabilitation." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) Cruz "has led a continuous life of crime after the prior" (*ibid*.) which supports the trial court's decision to deny his *Romero* motion.

The trial court was mindful of Cruz's background, which did include mental issues, but it was also mindful of Cruz's failure to address those issues. The court thoughtfully balanced Cruz's mental health history and the protection of society's interest in public safety. The trial court acted well within the ambit of its discretion in denying the *Romero* motion to strike.

Appellant also contends that his sentence constitutes cruel and unusual punishment. This issue was not raised in the trial court and is forfeited. "A claim that a sentence is cruel or unusual requires a 'fact specific' inquiry and is forfeited if not raised below." (*People v. Baker* (2018) 20 Cal.App.5th 711, 720.)

Because we reject all of Cruz's claims of error, we need not address the contention that cumulative errors require reversal.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


GRIMES, J.


VIRAMONTES, J.